[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 348.]

TOLEDO BAR ASSOCIATION *v.* PETERS.

[Cite as *Toledo Bar Assn. v. Peters*, 1999-Ohio-138.]

*Attorneys at law—Misconduct—Eighteen-month suspension with final twelve months stayed on condition—Neglecting an entrusted legal matter—Commingling client funds.*

(No. 99-1159—Submitted August 25, 1999—Decided December 22, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-73.

———————————

{¶ 1} In early 1996, respondent, William J. Peters of Toledo, Ohio, Attorney Registration No. 0032163, who had not registered or paid his fees with the Supreme Court for the years 1995 and 1996, settled a personal injury claim on behalf of his client, Lucretia Woods, and received a check for $15,000, which he deposited in his trust account on February 7, 1996. On February 6, 1996, after receiving the check and before depositing it, respondent prepared a settlement statement. The statement provided that respondent would take his agreed contingent fee of $5,000, transmit $5,471.20 to Woods, and use the balance of the proceeds to pay Woods's medical fees.

{¶ 2} Respondent claimed that at the time of the settlement he had an oral agreement with Woods to increase her recovery by compromising some of her medical bills for less than was due.

{¶ 3} On February 6, 1996, the day of the settlement statement, Chiropractic Enterprises ("Chiropractic") wrote to respondent and agreed to compromise its $3,350 bill for $2,000. On March 29, 1996, respondent sent a $1,000 check to Woods for her savings from the Chiropractic compromise and kept $350 as his fee for negotiating it. After several telephone calls to respondent,

Chiropractic wrote to him in June 1996, stating that it had not received the compromise amount and if it was not received within ten days, Chiropractic would seek payment from Woods. Chiropractic wrote respondent again in August 1996, noting that payment had not been received despite the fact that respondent had signed a "Doctor's Lien" with Chiropractic. Respondent finally paid Chiropractic $2,000 on January 31, 1997. From April 8, 1996 through June 10, 1996, and from June 21, 1996 through January 3, 1997, respondent had less than $2,000 in his trust account. He used the trust account for other than client matters because the Internal Revenue Service had attached his personal bank account.

{¶ 4} On February 20, 1997, respondent paid American Radiological $93.34 as a compromise of Woods's $140 bill, and kept the difference as his fee for reduction of the bill. On the same day, respondent paid National Digitizing $163.34 as a compromise of Woods's $245 bill, and kept the difference as a fee for achieving the reduction.

{¶ 5} On August 11, 1997 relator, Toledo Bar Association, filed a complaint charging that respondent's conduct violated several Disciplinary Rules. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 6} The panel found the facts as stated and concluded that by not paying Woods's medical bills for nearly a year, respondent violated DR 6-101(A)(3) (neglecting an entrusted legal matter), and by using the client funds in his trust account, he violated DR 9-102 (commingling client funds with the attorney's funds). The panel also found that respondent collected a clearly excessive fee and thereby violated DR 2-106(A). In addition, the panel found that respondent had not registered with the Supreme Court as required by Gov.Bar R. VI(1)(A) for a period of time before the complaint was filed.

{¶ 7} In mitigation, the panel found that the respondent had not been previously disciplined by the court and that he freely admitted his wrongdoing. The

panel recommended that respondent be suspended from the practice of law for eighteen months with the final twelve months stayed on condition that during the stay respondent submit to a monitoring program satisfactory to the relator.

{¶ 8} The board adopted the findings of fact of the panel, and found in mitigation that respondent showed genuine remorse for his misconduct and that Woods suffered no real harm as a result of the delay. The board concluded that respondent had violated DR 6-101(A)(3) and 9-102, but not 2-106(A), and adopted the recommendation of the panel.

––––––––––––––––––

*Jonathan B. Cherry*, for relator.
*Martin E. Mohler*, for respondent.

––––––––––––––––––

*Per Curiam*.

{¶ 9} We adopt the findings, conclusions, and recommendation of the board. Respondent violated DR 9-102. The evidence indicates that during most of the year in which respondent delayed paying his client's medical bills, the balance in his trust account was insufficient to make those payments and that insufficiency was caused by respondent's personal use of the funds. Respondent also violated DR 6-101(A)(3). His delay in paying Woods's medical bills for nearly a year was a breach not only of his promise to Woods in the settlement statement, but also of his agreement with Chiropractic to pay the compromise amount. Respondent's compromise of the American Radiological and National Digitizing bills solely for his own benefit was a breach of his fiduciary duty to his client.

{¶ 10} Respondent is hereby suspended from the practice of law for eighteen months with the final twelve months stayed on condition that during the stay respondent submit to a monitoring program satisfactory to relator. Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., CORRIGAN, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents because he would stay a one-year suspension.

MICHAEL J. CORRIGAN, J., of the Eighth Appellate District, sitting for RESNICK, J.

_____